J-S61016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: J.A.S., JR., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.A.S., SR., FATHER | No. 1033 MDA 2015 |

Appeal from the Order Entered on May 13, 2015
In the Court of Common Pleas of Susquehanna County
Orphans' Court at No.: O.C. 053-2014

BEFORE: PANELLA, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY WECHT, J.:                    **FILED OCTOBER 07, 2015**

J.A.S., Sr. ("Father") appeals the May 13, 2015 order that terminated his parental rights to his son, J.A.S., Jr. ("Child") (born in July 2006). We affirm.

Child had been out of his parents' care for multiple time periods. First, he was placed with family or friends without Susquehanna County Services of Children and Youth ("Agency") involvement, including from May 2007 to August 2007, June 2010 to January 2011, and January 2011 to May 2011. Notes of Testimony ("N.T."), 8/25/2014, at 7-9. Child was first involved with the Agency in August 2011 and was placed in foster care for four months until December 2011. *Id.* at 9. The Agency was informed at that time that Child had not had contact with Father in two years. N.T.,

---

[*]     Retired Senior Judge assigned to the Superior Court.

1/21/2015, at 74. Child's placement at the time of the hearing began in April 17, 2013. N.T., 8/25/2014, at 10. All of the placements were caused by D.T.'s ("Mother") drug and alcohol issues. *Id.* at 10-11. Mother and her paramour have criminal records related to drugs. *Id.* at 11. Father had multiple incarcerations and violations of probation stemming from a 2009 conviction, as well as drug-related issues. *Id.* at 11-12.

On June 20, 2014, the Agency filed petitions to involuntarily terminate the parental rights of Mother[1] and Father. The trial court began its hearing on the petitions on August 25, 2014. Neither Mother nor Father was present. However, there was testimony that Father had anticipated attending, but was in jail at the time of the hearing. *Id.* at 3-4. At the August 25, 2014 hearing, Agency caseworker Kimberly Harshaw testified that Child was prepared to live with S.G. ("Foster Mother") for the rest of his life. Child called Foster Mother "mom" and treated Foster Mother's daughter as his sister. *Id.* at 13. Ms. Harshaw opined that Child would not be harmed by the termination of his relationship with Mother or Father. *Id.* at 14. Ms. Harshaw testified that Foster Mother provides a stable and safe environment and meets all of Child's needs. *Id.* at 14-15.

The trial court held the second hearing on January 21, 2015. Child testified *in camera*. At the time, Child was eight years old. N.T., 1/21/2015,

_____

[1] The termination of Mother's parental rights is not the subject of this appeal.

at 3.  Child testified that he had some phone calls from Father, but the last visits were when Child was visiting at his paternal grandmother's house.  *Id.* at 9-10.  Before the last summer, Child had no visits or phone calls with Father that he could recall.  *Id.* at 10.  However, Child received approximately ten letters from Father through his parental grandmother while Father was in jail.  *Id.* at 18.  Child testified that Father has been in jail most of Child's life and that he had no bond with Father or a desire to see him. *Id.* at 12.

Child wanted to be adopted by Foster Mother because Foster Mother took care of him and he felt safe with her.  *Id.* at 13.  Child testified that he was not concerned that he would not be able to see Mother and Father anymore if parental rights were terminated.  *Id.* at 16.

Chad Weaver, another Agency caseworker, testified that when Child was placed in April 2013, Father was in drug and alcohol rehabilitation and was unable to care for Child.  *Id.* at 34.  At the first review hearing in January 2014, Father made no progress toward his permanency plan goals or toward alleviating the circumstances that led to Child's dependency.  *Id.* at 35.  At the next review hearing in April 2014, Father again made no progress.  *Id.* at 36.  At subsequent hearings, Father continued to make no progress, although there was minimal contact between Father and Child. *Id.* at 38.  However, Father's contact was usually instigated and arranged by Child's paternal grandmother.  *Id.* at 39.  Mr. Weaver opined that adoption was in Child's best interest.  *Id.* at 43.

Mr. Weaver testified that the contact between Father and Child at the paternal grandmother's house was largely unknown and unsanctioned by the Agency. *Id.* at 45. The Agency wanted Father to come to their office to sign the permanency plan and releases of information and to get his contact information, but Father never appeared even when Father made appointments to be there. *Id.* at 45, 53-55.

The case was continued until May 1, 2015 when the hearings concluded. Ms. Henshaw testified that she was assigned to the case in April 2014. N.T., 5/1/2015, at 7. As of the July 2014 review hearing, she had been unable to meet with Father as he had rescheduled their meeting twice and was then incarcerated. *Id.* at 8. She believed Father had no contact with Child while she was the caseworker. *Id.* As of January 2015, Father started sending letters to Child. *Id.* at 9. After the hearing in January 2015, Father had three scheduled visits with Child. However, Ms. Henshaw has difficulty arranging the visits because Father would not return phone calls, Father did not confirm visits, and Father arrived late for one visit. *Id.* at 9-12. Child did not appear to be engaged with Father during the visits. *Id.* at 12. Ms. Henshaw testified that Child was nervous about the visits because Child does not want to leave Foster Mother's home where he is safe and happy. Ms. Henshaw opined that Child would be harmed if his bond with Foster Mother were severed. *Id.* at 13. Child is reluctant to see Father and told Ms. Henshaw that he does not want to go to visits. Ms. Henshaw opined that Child had a minimal bond with Father. *Id.* at 25.

Foster Mother testified that Child had been in her home off and on since he was four years old. She loves Child and is willing to adopt him. *Id.* at 27. Foster Mother was willing to continue to facilitate Child's visits with paternal grandmother. *Id.* at 31. Foster Mother was also willing to permit Father to see Child provided Father remained clean and sober. *Id.* at 34-35.

Father testified that he was on house arrest at the time of the hearing, but that his sentence would end in September. *Id.* at 37. Father testified that he was in jail when Child was placed with Foster Mother in 2013. *Id.* at 39-40. While in jail, Father wrote letters to Child and sent them via the paternal grandmother. *Id.* at 41. Father was released in May 2014 and re-incarcerated in June 2014. *Id.* at 41, 44. Since his release in January 2015, Father had three visits with Child. *Id.* at 46. Father admitted that his relationship with Child is strained, but he believed it could be repaired over time. *Id.* at 48. Father submitted into evidence several letters and pictures he sent to Child, but most were sent after the petition to terminate parental rights was filed. *Id.* at 56.

On May 13, 2015, the trial court terminated Mother's and Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b). The trial court also filed an opinion in which it explained its rationale. On June 12, 2015, Father filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

The issues Father preserved in his concise statement and the issues in his Statement of Questions Involved in his brief are significantly different.

However, the actual argument Father presents in his brief tracks the issues in his concise statement. Because those issues were preserved and presented to the trial court, and because our appellate review is not impeded, we decline to find any waiver in Father's failure to comply strictly with our rules.

Father argues that, because the petition to terminate his parental rights was filed only six weeks after his release, he did not have time to establish a relationship with Child. Father sent Child letters while he was incarcerated. Father asserts that he had three visits with Child after he was released. As such, Father argues that he did not evidence a settled purpose of relinquishing his parental claim or fail to perform parental duties. Father's Brief at 9-10. Father also contends that it was Mother's, and not his, conduct that led to Child's placement. Therefore, Father argues that he did not cause Child to be without essential parental care. Father asserts that the Agency did not make sufficient efforts to reunite him with Child. *Id.* at 10-13.

Our standard of review in termination of parental rights cases is as follows:

> In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

It is well-settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by clear and convincing evidence, which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re T.F.*, 847 A.2d 738, 742 (Pa. Super. 2004).

The trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511, which states, in pertinent part, as follows:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of

- 7 -

relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

* * *

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

* * *

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions

described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

The trial court found grounds to terminate Father's parental rights pursuant to sections 2511(a)(1), (2), (5), (8), and (b). However, this Court only needs to agree with the trial court's conclusions with regard to one subsection of 23 Pa.C.S.A. § 2511(a), in addition to section 2511(b), in order to affirm the termination of parental rights. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Termination is a two-step process, in which a trial court first must determine if the grounds under subsection (a) are met, and then it must consider subsection (b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). The focus in terminating parental rights under section 2511(a) is upon the parent, while section 2511(b) focuses upon the child. *Id.* at 1008. None of Father's arguments challenge the trial court's findings regarding Child's best interest pursuant to subsection (b), so we focus solely upon subsection (a).

Because we need only find that there was clear and convincing evidence as to one subsection of 2511(a), we examine section 2511(a)(1). As such, we focus upon Father's arguments related to failure to perform parental duties. When considering that subsection, "we are instructed that we may not consider any effort by the parent to remedy the conditions described in subsection[] (a)(1) . . . if that remedy was initiated after the parent was given notice that the termination petition had been filed." *In re*

***D.W.***, 856 A.2d 1231, 1234 (Pa. Super. 2004).  Here, the petition was filed

on June 20, 2014, and we must focus upon Father's actions before that date.

> To satisfy Section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. . . .  It is well-established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants the involuntary termination.
>
> Further, Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child *and* refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child *or* fails to perform parental duties.

***In re C.S.***, 761 A.2d 1197, 1201 (Pa. Super. 2000) (quoting ***Matter of***

***Adoption of Charles E.D.M. II***, 708 A.2d 88, 91 (Pa. 1998) (citations

omitted)) (emphasis in original).

> [I]ncarceration of a parent does not, in itself, provide sufficient grounds for termination of parental rights; however, an incarcerated parent's responsibilities are not tolled during his incarceration.  ***In re D.J.S.***, 737 A.2d 283, 286 (Pa. Super. 1999).  Parental rights may not be preserved by waiting for some more suitable financial circumstance or convenient time for the performance of parental duties and responsibilities.  ***Id.*** at 287.  Further, parental duty requires that the parent not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances.

***Id.***

Parental duties has been defined as follows:

Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his . . . ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.

*In re Z.P.*, 994 A.2d 1108, 1118-19 (Pa. Super. 2010).

In *C.S.*, the father was in jail most of the child's life. *C.S.*, 761 A.2d at 1201. The father saw the child through quarterly court-ordered visits in prison. The father also testified that his mother gave the child gifts on his behalf. The father also sent approximately six cards and letters over the three years that the child was in foster care. This Court concluded that the father did not make sufficient efforts to maintain a relationship with the child and, therefore, had failed to perform parental duties. *Id.* at 1202.

Similarly, in **B.,N.M.**, the father sent cards and letters and even attempted to file for visitation, although he did not pursue the complaint for over seven months after filing the petition. **In re B.,N.M.**, 856 A.2d 847, 856 (Pa. Super. 2004). We stated:

> Sporadic cards or gifts during Child's life did not fulfill Father's role as a parent. He failed to seek help from sources other than Mother to try to see Child, acquire photographs of her, or obtain copies of her report cards. From 1994, when Mother ceased visitations, until 2002 when she asked him to voluntarily terminate his rights, Father did little more than occasionally try to contact Child through Mother, who was not facilitating the relationship. From 1998 until 2002, Father had virtually no contact with Mother or Child.

**Id.** at 858. Because the father did not make an effort to maintain his relationship with the child, we determined that the father had failed to perform his parental duties. **Id.**

Here, the trial court found that Father's participation in parental duties was minimal. Trial Court Order ("T.C.O."), 5/13/2015, at 5. The trial court cited Father's letters and sporadic visits as evidence of his involvement with Child. **Id.** at 5-6. However, the trial court concluded that these minimal efforts did not demonstrate the affirmative duty required to perform one's parental duties. **Id.** at 6.

We agree. Father's involvement in Child's life has been curtailed due to his repeated incarcerations. There is no evidence of the extent of Father's involvement prior to his most recent jail sentence other than the testimony that Father and Child had no contact between 2009 and 2011. Additionally,

- 12 -

Child had been in and out of placements with Foster Mother since Child was four years old, and there is no indication that Father was ever considered as a placement for Child during that time. Regardless of whether Mother's conduct lead to Child's dependency, Father was not available to care for Child and was not performing his parental duties.

Father has sent Child some letters and cards over the course of Child's life. Father saw Child occasionally at the paternal grandmother's home. However, Child could recall no visits prior to the summer of 2014. Father's most consistent involvement was after the petition to terminate his rights was filed, which we may not consider. *See **D.W.***, *supra*. "Sporadic cards or gifts" are insufficient to fulfill Father's role in Child's life. *See **B.,N.M.**, supra*. There is no testimony that Father attempted to contact the Agency, Mother, Foster Mother, or anyone else to gain information about Child and his life. There simply is no evidence that Father acted affirmatively to maintain a relationship with Child, demonstrated a continued interest in Child, or used all available resources to preserve his relationship with Child. The trial court did not abuse its discretion in terminating Father's parental rights.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esc.
Prothonotary


Date: 10/7/2015