**In re: D.W.**

**Appeal of: B.B.W., Mother.**

**In re: B.C.**

Superior Court of Pennsylvania.

Submitted June 28, 2004.
Filed Aug. 18, 2004.

---

Howell J. Saul, Philadelphia, for appellant.

Deborah A. Fegan, Participant Atty., Philadelphia, for appellees.

Jonathan Q. Irvine, Participant Atty., Philadelphia, for Father.

Cynthia N. Keller, Participant Atty., Philadelphia, for Dept. of Human Services.

BEFORE: LALLY–GREEN, OLSZEWSKI, JJ., and McEWEN, P.J.E.

OPINION BY OLSZEWSKI, J.:

¶ 1 This appeal presents an issue of first impression for this Court, namely, whether the evidentiary restriction in 23 Pa.C.S.A. § 2511(b) applies to each level of consideration in the involuntary termination of parental rights. In this matter, appellant/mother became known to the City of Philadelphia Department of Human Services (DHS) due to concerns over mother's housing and drug use. On April 4, 2001, mother signed a voluntary placement agreement for her three youngest children. After the children were placed into foster care, DHS prepared Family Service Plan (FSP) objectives for mother. The goal was to return the children to mother's home. FSP objectives included mother obtaining suitable housing and mother attending a drug treatment evaluation. On May 31, 2001, the children were adjudicated dependent. Over the next year DHS met with mother but mother failed to work toward her objectives. In September 2002, DHS changed the goal from reunification to adoption. On April 3, 2003, after the children had been in foster care for two years, DHS filed petitions for termination of mother's parental right to each child. A hearing on the involuntary termination was conducted on December 8, 2003. At the time of the hearing, mother was incarcerated and participated by telephone.[1]

¶ 2 During the hearing, the court heard testimony from DHS that during the two years the children were in DHS custody, mother visited with her children a total of 18 times out of 29 scheduled supervised visits. Mother would spend more time talking with her relatives at those visits than she would spend with her children. Mother would also curse loudly during the visits and was unable to control the children. When mother was admonished, she refused to listen to advice on how to han-

---

1. We are unable to determine the date that mother entered prison but it was, apparently, after the petition for termination was filed.

dle her children. DHS testified that during the two years that mother was given to comply with the FSP objectives, mother did not submit to a drug treatment evaluation[2] nor did she obtain suitable housing.

¶ 3 In defense of the petitions to terminate her rights, mother presented the testimony of Gloria Woods. Ms. Woods testified that she works for Options, a drug treatment program. Ms. Woods testified that she met with mother on June 19, 2003, regarding drug rehabilitation. At this point in the testimony, counsel for DHS objected to any further testimony by Ms. Woods. When the court requested an offer of proof, mother's counsel indicated that Ms. Woods would testify that mother sought drug rehabilitation while mother was in prison; that is, mother sought drug rehabilitation *after* DHS had filed the petitions for termination of mother's parental rights. The court indicated that it would not hear the evidence.

¶ 4 Mother also testified at the hearing. Mother stated that she was presently trying to obtain Section 8 housing to be available on her release from prison. The court stated that it would not consider mother's present efforts to obtain housing. After all the testimony was given, the court ordered the involuntary termination of mother's parental rights with regard to each of the three children. Mother filed the instant appeal.

¶ 5 Involuntary termination of parental rights is governed by the Adoption Act, 23 Pa.C.S.A. § 2101, *et seq.* Section 2511 of the Adoption Act sets forth the grounds on which a petition for involuntary termination may be filed. The grounds cited by DHS in the case *sub judice* are set forth in the Act as follows:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to

---

**2.** The testimony of DHS indicates that mother's specific goal was to be evaluated for drug treatment and then comply with the recommendations for treatment. Mother never participated in the initial evaluation.

exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(1), (a)(2), (a)(5), and (a)(8). Section 2511 also sets forth additional factors and limitations that govern the court's consideration of a termination petition.

> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), *the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.*

23 Pa.C.S.A. § 2511(b) (emphasis added). Section 2511 requires the trial court to initially focus on the conduct of the parent by determining whether any of the conditions described in subsection (a) existed prior to the filing of the petition. *In re: B.L.L.*, 787 A.2d 1007 (Pa.Super.2001). If the trial court finds that the petitioner has proven any of the grounds enumerated in subsection (a), the court then focuses on the needs and welfare of the children as directed by subsection (b). *Id.* It is a two-tier analysis created by the General Assembly to guide us when we are asked to involuntarily terminate one's parental rights. *Id.* Section 2511 instructs us that we may not terminate a parent's right solely on environmental factors if we determine that those factors were beyond the parent's control. In the last sentence of subsection (b), we are instructed that we may not consider any effort by the parent to remedy the conditions described in sub-

sections (a)(1), (a)(6) or (a)(8) if that remedy was initiated after the parent was given notice that the termination petition had been filed. In the instant matter, appellant argues that subsection (b)'s evidentiary restriction applies to an isolated portion of the court's two-tier analysis; to-wit, appellant states that "[a] careful reading of Sections 2511(a) and (b) reveals that the exclusion clause only applies to the first part of the bifurcated termination analysis: namely, whether there is a statutory basis for terminating parental rights under subsections 2511(a)(1), (6), or (8)." Appellant's brief at 9. This argument forms the basis of appellant's appeal: "[Whether the] trial judge committed an error of law by reading the exclusion clause in Section 2511(b) so broadly as to bar testimony that was very relevant to the issue of the children's needs and welfare." *Id.* We find that the trial court did not err when it refused to consider mother's testimony of her post-petition conduct because the evidentiary restriction applies to the entire termination analysis.

¶ 6 On the issue of statutory construction, our Supreme Court recently stated the following:

> In general, the interpretation of a statute is a question of law, with the objective being to ascertain and effectuate the intent of the General Assembly. In this regard, *the plain language of a statute is the foremost indication of legislative intent.* While ... an interpretation of a statute by those charged with its administration and enforcement is entitled to deference, such consideration most appropriately pertains to circumstances in which the provision is not explicit or is ambiguous.

*Tritt v. Cortes*, —— Pa. ——, 851 A.2d 903, 905 (2004) (internal citations omitted) (emphasis added). In this matter, we find that the last sentence of 23 Pa.C.S.A. § 2511(b) is capable of only one reasonable interpretation. Because we find that the

words are clear and free from ambiguity, we may not disregard the letter of the statute under the pretext of pursuing its spirit. 1 Pa.C.S.A. § 1921(b). We are required to give effect to all provisions of the statute when possible. 1 Pa.C.S.A. § 1921(a). Applying these principles, we find that the evidentiary restriction set forth in § 2511(b) applies to the entire termination analysis.

¶ 7 Appellant argues that this Court carved out an exception to § 2511(b)'s restriction clause when we considered a parent's post-petition activities in *In re: K.C.W.*, 456 Pa.Super. 1, 689 A.2d 294 (1997). Appellant is incorrect for two reasons. First, the judiciary may not carve out exceptions that were within the General Assembly's province to create. Second, appellant has misread *K.C.W.* The parent's actions in *K.C.W.* to correct the problems in her home were *initiated prior to* the filing of the termination petition and continued beyond the petition date.

¶ 8 Orders AFFIRMED.