J-S77018-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: E.L., III, A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.L., JR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 854 MDA 2016 |

Appeal from the Order Entered May 10, 2016
In the Court of Common Pleas of Wyoming County
Civil Division at No(s):  2014-00010

| | | |
|---|---|---|
| IN THE INTEREST OF: J.J.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.L., JR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 855 MDA 2016 |

Appeal from the Order Entered May 10, 2016
In the Court of Common Pleas of Wyoming County
Civil Division at No(s):  2014-00011

| | | |
|---|---|---|
| IN THE INTEREST OF: D.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.L., JR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 856 MDA 2016 |

Appeal from the Order Entered May 10, 2016
In the Court of Common Pleas of Wyoming County
Civil Division at No(s):  2014-00012

| IN THE INTEREST OF: T.L., A MINOR | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| APPEAL OF: E.L., JR., FATHER | : : : : : : | |
| | : | No. 857 MDA 2016 |

Appeal from the Order Entered May 10, 2016
In the Court of Common Pleas of Wyoming County
Civil Division at No(s):  2014-00013

BEFORE:  PANELLA, OLSON, and PLATT,* JJ.

MEMORANDUM BY OLSON, J.:

E.L., Jr., ("Father") appeals from the orders[1] entered on May 10, 2016, granting petitions filed by Wyoming County Human Services a/k/a Wyoming County Children and Youth Services ("CYS") involuntarily terminating his parental rights to his four male children: T.L. (born August 2010); D.L., (born November 2009); J.J.L., (born June 2008); and E.L., III, (born March 2007) (collectively "Children").  We remand for further proceedings consistent with this memorandum.

This Court previously set forth the factual background and procedural history of this case as follows.

_____

* Retired Senior Judge assigned to the Superior Court.

[1] This Court *sua sponte* consolidated the four appeals in this matter.

Father was incarcerated in 2011[ after being] convicted of possession of a firearm without a license. . . . [I]n October and November 2014, Father was [] transitioning back to society, living in a halfway house.

Prior to 2011, Children lived with Father and natural Mother, H.M., ("Mother"), as well as K.A.P., Jr., Mother's oldest child from another man. In November 2012, while Father was incarcerated, CYS received a referral that the two oldest children were not enrolled in school and that there were concerns for Children's health and well-being in the home. As a result, in December 2012, Children were removed from Mother's home by CYS. Children have been in the custody of CYS since 2012; Children, along with their half-brother, K.A.P., Jr., have been in the care of F.S. and R.S., ("Foster Parents"), since the summer of 2013.

The court granted a goal change to adoption on January 13, 2014. Father was released from his incarceration one week later, on January 21, 2014. Foster Parents are prospective adoptive parents; they wish to adopt [Children], as well as K.A.P., Jr. CYS filed petitions for involuntary termination of Father's parental rights with respect to Children on August 22, 2014.

*In re E.L.*, 2015 WL 6950102, *1 (Pa. Super. July 2, 2015) (unpublished memorandum) (footnotes omitted).

On November 19, 2014, the trial court granted CYS' petitions and terminated Father's parental rights as to Children. Father lodged an appeal, and this Court found that CYS failed to prove by clear and convincing evidence that Father's parental rights should be terminated pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (b), and reversed the termination order. *See generally id.* Unbeknownst to any party, during the pendency of that first appeal, Father was re-incarcerated for not following the terms of the halfway house in which he was residing.

- 3 -

On March 7, 2016, CYS filed a second set of petitions seeking involuntary termination of Father's parental rights as to Children. On April 14 and 28, 2016, the trial court held a hearing on these termination petitions. At the hearing, Father testified that he never received notice of this Court's July 2, 2015 decision reversing the trial court's November 19, 2014 termination orders. He also explained that he did not attempt to contact Children or CYS because of the November 19, 2014 order terminating his parental rights. In his brief before this Court, Father concedes that he learned of this Court's July 2, 2015 decision in late-January 2016. **See** Father's Brief at 3, *citing* N.T., 4/28/16, at 42-43; **see also** N.T., 4/28/16, at 38-39.

The attorney who represented Father during the first termination proceedings also testified at the termination hearing. He stated that upon receipt of this Court's July 2, 2015 decision he attempted to contact Father, but could not reach him. CYS also requested that Father's attorney provide Father's last known address. Father's attorney provided CYS with the address Father supplied and CYS subsequently attempted to contact Father at that address. At least one letter to Father at that address was signed for by an adult individual who claimed to be Father.

Meagan Janiszweski ("Janiszweski"), the CYS caseworker assigned to the family since the inception of the case testified that, at placement, Children had scabies, dental issues, were behind on their vaccinations, and a

couple of the Children had bronchitis. D.L. had bottle rot. Foster Parents have met the medical, dental, and vision care needs of Children. T.L. attends Roslund School, and the other Children attend Evans Falls School. Foster Parents also addressed three of the Children's speech difficulties. Children are excelling in school. Foster Parents properly feed and clothe Children. T.L. and D.L. share a bedroom, and J.J.L. and E.L. share a bedroom. K.A.P., Jr., has his own bedroom at Foster Parents' home.

Children had emotional issues when they were placed with Foster Parents, and have received counseling. Since July 2014, none of the Children have requested to see Father. Only E.L. recognizes Father as his natural father. T.L. and D.L. refer to Foster Parents as "mom" and "dad." J.J.L. and E.L. realize that Foster Parents are not their biological parents.

Janiszweski testified that a bond has developed between Children and Foster Parents. Children are very attached to Foster Parents. There is no bond between Children and Father at this time. Janiszweski testified that termination of Father's parental rights would be in Children's best interests. Janiszweski also testified there would not be any bond between Children and Father if they were returned to him at this time. Father never requested visitation of Children through CYS after July 2014. CYS would have accommodated such a request.       .

Foster Mother testified that T.L. and D.L. were placed with her and Foster Father in May 2013, and J.J.L. and E.L., III, were placed with them in August 2013. Foster Mother testified that Children have not mentioned Father.

The trial court also took judicial notice of the evidence presented at the previous termination proceeding. On May 10, 2016, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1,2,5,8) and (b).[2] This timely appeal followed.[3]

Father raises three issues for our review:

1. Is reversal required where the [trial] court's opinion terminating [Father's] rights: (1) failed to make any findings of fact concerning the needs, welfare, emotional bond, love, comfort, security, and stability of [C]hildren; (2) failed to contain any analysis of the elements of 23 Pa.C.S.A. § 2511 beyond a mere recitation of the language of the statute itself; and (3) where CYS [] failed to produce any testimony or evidence concerning the emotional bond between Father [] and the [C]hildren?

2. Did the [trial] court commit an error of law and violate the doctrine of [l]aw of the [c]ase, when the [trial] court held that

_____

[2] Although the trial court did not cite the relevant statutory sections, its use of the Adoption Act's language indicates the sections under which the trial court terminated Father's parental rights.

[3] Father filed concise statements of errors complained of on appeal ("concise statements") contemporaneously with his notices of appeal. *See* Pa.R.A.P. 1925(a)(2)(i) and (b). All issues raised on appeal were included in Father's concise statements. The trial court did not issue a Rule 1925(a) opinion. Instead, the trial court wrote a letter to the President Judge of this Court stating that the reasons for its orders were included in its May 10, 2016 findings of fact and conclusions of law.

the six [] and [12] month time periods of 23 Pa.C.S.A. § 2511, were met, such that [Father] neglected [the C]hildren's needs, notwithstanding that during the majority of the time periods in question [Father's] rights were improperly terminated by prior order of the [trial] court, [Father] was directed not to contact the [C]hildren by order of the court, and by reason that a prior panel of the Superior Court determined that [Father] was thwarted in his attempts to contact [the C]hildren?

3. Did the [trial] court commit an error of law and error of fact when it held that the "last known address" of [Father], for service of process purposes, was a residential address notwithstanding that the [trial] court also found that [Father] was incarcerated by the Department of Corrections throughout these proceedings?

Father's Brief at xiii.[4]

In his first issue, Father challenges the sufficiency of the evidence to support the trial court's termination of his parental rights.

In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty[,] and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue. It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law. Our scope of review is limited to determining whether the trial court's order is supported by competent evidence.

---

[4] We have re-numbered the issues for ease of disposition.

*In re Adoption of G.L.L.*, 124 A.3d 344, 346 (Pa. Super. 2015) (internal quotation marks and citations omitted).

The trial court terminated Father's parental rights under 25 Pa.C.S.A. § 2511(a)(1,2,5,8) and (b). We focus our attention on section 2511(b). Those statutory provisions provide that:

> Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical[,] and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing[,] and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511(b).

The focus in terminating parental rights under section 2511(a) is on the parent, but, under section 2511(b), the focus is on the child. *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). We cannot affirm the trial court's implicit finding that section 2511(b) was satisfied. As this Court explained when reversing the first set of orders terminating Father's parental rights:

> [T]he trial court erred when, after finding termination under section 2511(a)(2), it failed to engage in any discussion with respect to section 2511(b). *See* 23 Pa.C.S.A. § 2511(b) ("The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent **shall** not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.") (emphasis added). Where, as here, the court determined termination was warranted under subsection (a), it was required to go on to a needs and welfare analysis under subsection 2511(b). *See* [*In*

- 8 -

*re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted)]. Under subsection (b), the court's focus is not on the parent's conduct, but on the children and their needs. "This analysis includes weighing the needs and welfare of the child, as well as an examination of the emotional bond between parent and child. *In re: D.W.*, 856 A.2d 1231, 1234 (Pa. Super. 2004). This "encompasses intangibles such as love, comfort, security, and stability." *In re Adoption of R.J.S.*, 901 A.2d 502, 514 (Pa. Super. 2006). . . .

"A proper Section 2511(b) analysis focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *In re T.D.*, 949 A.2d 910, 920 (Pa. Super. 2008). "The court should examine intangibles such as "love, comfort, security, and stability" when determining the needs and welfare of the child." *Id.*[; *s*]*ee also I.G.*, 939 A.2d at 951 ("the subsection (b) evaluation must be given more than mere lip service."). . . .

[T]he court failed to engage in a section 2511(b) analysis. Termination is controlled by statute and requires a two-step analysis. Where, as here, the trial court determined Father's conduct warranted termination of his parental rights under section 2511(a), the court was required to engage in the second part of the analysis under section 2511(b).

*E.L.*, 2015 WL 6950102 at *10.

Although directed to by a panel of this Court to make specific findings under section 2511(b), the trial court's May 10, 2016 findings of fact and conclusions of law failed to address section 2511(b). We cannot make findings of fact on behalf of the trial court. It is the trial court's duty to make appropriate factual findings which this Court then reviews for an abuse of discretion. Thus, we will not engage in fact-finding. Accordingly, we must again remand this case to the trial court to conduct a proper section 2511(b) analysis as outlined above.

As we remand this case for further proceedings relating to section 2511(b), we decline to reach Father's second and third issues on appeal. We believe it is in the best interest of Children to promptly resolve this matter. Accordingly, we shall retain jurisdiction over this appeal. Within ten days of this memorandum, the trial court shall issue a Rule 1925(a) opinion that adequately addresses the best interest of Children pursuant to section 2511(b). Within three days of the trial court's Rule 1925(a) opinion, Father's counsel shall notify this Court's prothonotary via letter whether additional briefing is necessary. If counsel notifies this Court that no such additional briefing is necessary (or fails to notify this Court within the required time period), we will decide the appeal on the basis of the trial court's Rule 1925(a) opinion and the briefs filed by Father and CYS. If additional briefing is necessary, Father shall file a supplemental brief with this Court within 10 days of the trial court's Rule 1925(a) opinion. CYS and the guardian *ad litem* may file a brief within ten days of Father's supplemental brief.[5] No reply will be permitted without leave of Court.

Case remanded. Jurisdiction retained.

---

[5] If, however, after a rigorous section 2511(b) analysis, the trial court determines that termination is not in Children's best interest, CYS/the guardian *ad litem* and Father shall reverse roles for purposes of supplemental briefing.