J-S50015-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: K.D.M., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: M.M.M., NATURAL | : | |
| MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 697 WDA 2019 |

Appeal from the Decree Entered April 5, 2019
In the Court of Common Pleas of Jefferson County Orphans' Court at
No(s): 7A-2019 O.C.

BEFORE: LAZARUS, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, J.: FILED SEPTEMBER 27, 2019

M.M.M. (Mother) appeals from the decree, entered in the Court of Common Pleas of Jefferson County, terminating her parental rights to her son, K.D.M. (Child) (DOB: 12/16).[1] After our review, we affirm.

On July 5, 2017, Mother was incarcerated for violation of probation. On July 6, 2017, Jefferson County Children and Youth Services (Agency) filed an application for emergency protective custody of Child based on Mother's inability to care for Child due to her addiction to illegal narcotics and incarceration. Child was six months old. The court adjudicated Child dependent on July 24, 2017, and, after exhausting kinship care options, the Agency placed Child with foster parents on September 20, 2017. Child

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Natural father is not known.

continues to reside with foster parents, who are Child's prospective adoptive parents.

The Agency created a family service plan (FSP) for Mother, with the goal of reunification. Mother was required to attend parenting classes, participate in regular visitations with Child, attend drug and alcohol treatment, obtain mental health services, and secure stable housing.

While Mother was incarcerated, the Agency facilitated six visits with Child between January 29, 2018 and September 13, 2018. Those visits went well. Caseworker Jennifer Wirgnoivcz testified that when Mother was released from incarceration, the Agency arranged three supervised visits at Mother's residence, which progressed to an overnight visit. N.T. Termination Hearing 3/29/19, at 7. Prior to a second scheduled overnight visit, Mother tested positive for amphetamines and methamphetamines. Id. at 8. The Agency suspended further home visits and informed Mother future visits would take place at the Agency. The Agency then scheduled ten, two-hour visits, confirming that the time was convenient for Mother, and arranged for transportation for Mother to and from the visits at no cost to her. Mother missed all ten visits, the last of which was scheduled for November 28, 2018. Id. at 9-20. Six days later, Mother was again incarcerated, and she chose not to have Child visit her in jail. Id. at 21.

Although Mother completed parenting classes, she did not accomplish her remaining reunification goals. Mother was discharged from drug and alcohol treatment due to non-compliance, and she failed to obtain mental

health services, to participate in the last ten scheduled visitations, and to obtain stable housing. Id. at 22-24, 30-36. Caseworker Wirgnoivcz characterized Mother's compliance with the FSP as "minimal." Id. at 37-38.

On February 19, 2019, the Agency filed a petition for involuntary termination of Mother's parental rights. At that time, Child had been in the Agency's custody for over eighteen months.

Following the March 29, 2019 termination hearing, the court entered an order terminating Mother's parental rights to Child. Mother filed a timely notice of appeal. Both Mother and the trial court have complied with Pa.R.A.P. 1925. Mother raises the following issues for our review:

1. Whether the trial court erred in terminating [Mother's] parental rights under 23 Pa.C.S.A. § 2511(a)(2)?

2. Whether the trial court erred in terminating [Mother's] parental rights under 23 Pa.C.S.A. § 2511(a)(5)?

3. Whether the trial court erred in terminating [Mother's] parental rights under 23 Pa.C.S.A. § 2511(a)(8)?

4. Whether the trial court committed an error and/or abuse of discretion in finding that termination was in [Child's] best interests in accordance with 23 Pa.C.S.A. § 2511(b)?

Appellant's Brief, at 4.

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge'sdecision the same deference that we would give to a jury verdict.

In re: Involuntary Termination of C.W.S.M. and K.A.L.M., 839 A.2d 410, 414 (Pa. Super. 2003).

> In a proceeding to involuntarily terminate parental rights, the burden of proof is upon the party seeking termination to establish by "clear and convincing" evidence the existence of grounds for doing so. The standard of "clear and convincing" evidence is defined as testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

In re A.L.D., 797 A.2d 326, 336 (Pa.Super.2002) (quoting In re Adoption of Atencio, 650 A.2d 1064, 1066 (Pa. 1994)).

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. In re D.W., 856 A.2d 1231, 1234 (Pa. Super. 2004). Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). In re B.L.L., 787 A.2d 1007, 1013–14 (Pa. Super. 2001). Only after determining that the parent's conduct warrants termination of his or her parental rights must the court engage in the second part of the analysis: determination of the needs and welfare of the child under the standard of best interests of the child. C.M.S., [884 A.2d 1284, 1286–87 (Pa. Super. 2005)]; A.C.H., [803 A.2d 224, 229 (Pa. Super. 2002) ]; B.L.L. Although a needs and welfare analysis is mandated by the statute, it is distinct from and not relevant to a determination of whether the parent's conduct justifies termination of parental rights under the statute. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child.

In re Adoption of R.J.S., 901 A.2d 502, 508 (Pa. Super. 2006).

Here, the court found clear and convincing evidence that termination was proper under sections 2511(a)(2), (a)(5) and (a)(8). While the trial court

- 4 -

found that the Agency met its burden of proof under each section quoted above, we need only agree with its decision as to any one subsection in order to affirm the termination of parental rights. See *In re J.E.*, 745 A.2d 1250 (Pa. Super. 2000); see also *In re J.I.R.*, 808 A.2d 934, 940 n. 6 (Pa. Super. 2002). Here, we consider whether the court properly terminated Mother's parental rights pursuant to sections 2511(a)(2) and (b).

The Adoption Act governs the involuntary termination of a parent's parental rights to a child and provides, in relevant part, as follows:

§ 2511. Grounds for involuntary termination

(a) General Rule. The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(b) Other considerations. The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

This Court has stated:

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

In re Adoption of M.E.P., 825 A.2d 1266, 1272 (Pa. Super. 2003). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." In re A.L.D., 797 A.2d 326, 337 (Pa. Super. 2002). A parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. Id.

Mother argues that there was "no testimony or evidence presented that [she] had an incapacity that caused [Child] to be without essential parental care and control." Appellant's Brief, at 6. This argument misapprehends the record. Evidence of Mother's actions and her own testimony, in addition to the caseworker's testimony, supports the court's finding that termination was warranted under section 2511(a)(2). Mother was incarcerated when Child was six months old. Despite the Agency's best efforts to reunify Mother with Child, Mother failed to comply with the terms of both her FSP and her probation. As a result, she was re-incarcerated; upon release, she missed ten scheduled visits with Child. Mother acknowledged at various points during

those missed visits that she would be unable to pass a drug test. As the trial court observed:

> Ultimately, [Mother] allowed her addiction to take priority over her son, and the record indicates that she cannot or will not remedy within a reasonable period of time the conditions that led to [Child's] removal in the first place. While she was out on parole, Mother had multiple opportunities to establish a firm relationship with her son. [The Agency] wanted her to succeed, believed she would, and thus instituted an accelerated reunification protocol. Even after her first documented failure on October 5, 2018, the Agency made every reasonable effort to encourage and accommodate Mother's rehabilitation, both as an addict and as a parent, while simultaneously ensuring [Child's] safety. Even after visits were relocated to the Agency, for instance, [Caseworker] Wirgnoivcz set up transportation through Justice Works and engaged other social services on Mother's behalf. [Caseworker Wirgnoivcz] also reached out time after time—missed appointment after missed appointment— in an effort to re-engage Mother and get her to comply with her service plan so she could be reunited with her son. Mother consistently rejected [the caseworker's] help. After seeing [Child] four times in less than a month, []Mother completely neglected him. Ten visits were arranged for her, . . . and ten visits were missed. Some Mother did not even attempt to excuse. She knew, though, that her drug use was the reason for her neglect and even told [Caseworker] Wirgnoivcz that she would not be back unless she could pass a urine test. At the same time, she declined the drug treatment that might have helped her control her addiction. She then went to prison for the second time since [child] was born and was again rendered incapable of caring for him because of it.

Trial Court Opinion, 4/8/19, at 8.

At the hearing, Mother also acknowledged that she was "not able to be what [Child] needs me to be[.]" N.T. Termination Hearing, supra at 87. Mother stated she was willing "to sign [over] my rights for my son[,]" but preferred that he be placed with her cousin so that she could be a part of his

life. *Id.* Mother testified that her cousin had met Child when he was one week old, has not seen Child since, and does not have a relationship with Child. *Id.* at 88. As the Orphans' Court aptly noted, if termination is appropriate, the next inquiry focuses "on the needs and best interests of the *child,* not his or her biological family." Trial Court Opinion, *supra* at 9 (emphasis in original).

We conclude that there is competent, clear and convincing evidence in the record to support the court's determination that Mother has not demonstrated any ability to remedy the circumstances that led to Child's placement, nor is there any indication that she could remedy such circumstances in the near future. The record supports the court's findings that Mother was incapable of parenting Child, that Child had been left without proper parental care and control, and that Mother cannot, or will not, remedy her parental incapacity. *See* 23 Pa.C.S.A § 2511(a)(2); *M.E.P., supra* at 1272. We find no error or abuse of discretion. *In re S.P.,* 47 A.3d 817, 826-27 (Pa. 2012).

Next, we consider whether the Orphans' Court abused its discretion by terminating Mother's parental rights pursuant to section 2511(b). *See In re Adoption of C.L.G.,* 956 A.2d 999, 1009 (Pa. Super. 2008) (en banc). This Court has stated that the focus in a termination proceeding under section 2511(a) is on the parent, but under section 2511(b) it shifts to the child. *Id.* at 1008. In reviewing the evidence in in support of termination under Section 2511(b), our Supreme Court recently stated:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." In re K.M., 53 A.3d 781, 791 (Pa. Super. 2012). In In re E.M., [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. In re K.M., 53 A.3d at 791.

In re T.S.M., 71 A.3d 251, 267 (Pa. 2013).

In conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. In re Z.P., 994 A.2d 1108, 1121 (Pa. Super. 2010). Further, it is appropriate to consider a child's bond with his foster parents. See In re T.S.M., 71 A.3d at 268.

Mother argues that Caseworker Wirgnoivcz's testimony established that a bond existed between Mother and Child. She points to Caseworker Wirgnoivcz's description of Mother and Child's interactions during visits:

> The interactions were good. Mom did take the child, and she did play with him. The interactions were appropriate. She supervised him there, and some of the visitation they did appear bonded. There were no concerns.

Appellant's Brief, at 9, citing N.T. Termination Hearing, supra at 62. We point out, however, that this assessment pertained to the six visits prior to Mother's re-incarceration and prior to her missing ten scheduled visits. With respect to Child's bond with his foster parents, Caseworker Wirgnoivcz testified:

> [C]hild is doing phenomenal. He is thriving in the home. [Foster parents] have him actively participating in [H]ead [S]tart. They come to the home and work with him on his milestones. He is advanced in several of the areas. They have him actively involved with working on hi[s] swimming. They have made all of his medical appointments, and he is doing very well, up to date on all of his immunizations. So there are no concerns at this time.

N.T. Termination Hearing, supra at 49. Caseworker Wirgnoivcz emphasized that Child "has a strong bond with [foster parents]; "[h]e is very close to them, and he's doing very well with them and responding to them." Id. at 57.

Guardian ad litem Kerith Strano Taylor, Esquire, and Joseph D. Ryan, Esquire, counsel for Child, also testified. Both agreed that Child's bond was with his foster family, and that termination would be in Child's best interests. Id. at 95-97.

Our Supreme Court has noted that "the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition." In re T.S.M., 71 A.3d 251, 267 (Pa. 2013). "Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." Id. at 268. Moreover, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind. Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly." Id. at 269.

Mother has so much as conceded that she is unable to place herself in position to parent Child. See In re Z.S.W., 946 A.2d 726, 732 (Pa. Super. 2008) (a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting"). At the time of the hearing, Child had been with foster parents for over eighteen months, since September of 2017. Foster parents have met all of Child's physical and emotional needs, and he looks to them for comfort and care. It is clear that Child has a strong bond with them. The record supports the Orphans' Court's determination that the termination of Mother's parental rights to Child is in his best interests, and that Child would not suffer any harm from the termination of Mother's parental rights.

Accordingly, we conclude that the Orphans' Court correctly determined that the Agency met its burden of proof under 23 Pa.C.S.A. § 2511(a)(2) and (b). We affirm the court's decree terminating Mother's parental rights.

Decree affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  9/27/2019

- 11 -