J-S02017-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.M.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: C.M., MOTHER | : | |
| | : | No. 1802 EDA 2021 |

Appeal from the Decree Entered August 10, 2021
In the Court of Common Pleas of Chester County Orphans' Court at
No(s): AD-20-0042

| | | |
|---|---|---|
| IN THE INTEREST OF: A.M.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: C.M., MOTHER | : | |
| | : | No. 1803 EDA 2021 |

Appeal from the Decree Entered August 10, 2021
In the Court of Common Pleas of Chester County Orphans' Court at
No(s): AD-20-0043

| | | |
|---|---|---|
| IN THE INTEREST OF: T.M.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: C.M., MOTHER | : | |
| | : | No. 1804 EDA 2021 |

Appeal from the Decree Entered August 10, 2021
In the Court of Common Pleas of Chester County Orphans' Court at
No(s): AD-20-0046

BEFORE:  OLSON, J., KING, J., and McCAFFERY, J.

J-S02017-22

MEMORANDUM BY OLSON, J.:                    **FILED FEBRUARY 24, 2022**

Appellant, C.M. (Mother), appeals from the decrees entered on August 12, 2021 involuntarily terminating Mother's parental rights to her three children, A.M.S. (a female born September 2010), K.M.S. (a female born March 2015), and T.M.S. (a male born February 2018), pursuant to Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938.[1]  We affirm.

We briefly summarize the facts and procedural history of this case as follows.  The Chester County Department of Children, Youth, and Families (CYF) received a report from Children's Hospital of Philadelphia that K.M.S., who was diagnosed with leukemia, was not receiving needed chemotherapy treatment and proper medical care.  CYF also received reports of Mother's and Father's use of controlled substances, including methamphetamines.  On numerous occasions, police responded to calls of domestic violence at a residence shared by Mother and Father.[2]  In September 2018, the family was evicted from their home.  Mother and the children lived temporarily with Mother's paramour.  Following an investigation, in February 2019, CYF

---

[1]  On September 29, 2021, by *per curiam* order, this Court *sua sponte* consolidated the children's cases.  The trial court also involuntarily terminated the parental rights of the children's biological father, T.S.  He has also appealed, but his appeals are docketed separately from the instant matter.

[2]  Mother and Father were in a relationship for nine to 10 years, but never married.

- 2 -

indicated that the medical neglect by Mother and Father constituted child abuse.[3]

On March 28, 2019, CYF assumed care of the children. On April 15, 2019, the children were adjudicated dependent. The trial court entered various dependency orders setting goals for Mother's reunification with the children. Mother was to complete drug and alcohol and mental health evaluations and follow treatment recommendations. Mother was also ordered to submit to random urine screenings and a hair follicle test for narcotics, establish stable housing and employment, take life skill classes, participate in the children's medical care, sign necessary medical releases for CYF to obtain the children's medical records, attend supervised visitation with the children, and maintain regular contact with CYF.

On August 7, 2020, CYF filed petitions for the involuntary termination of the parental rights of both Mother and Father pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (a)(2), (a)(5), (a)(8), and (b). The trial court held hearings

---

[3] Soon thereafter, in March 2019, Father was incarcerated and charged with harassment, kidnapping, unlawful restraint of a child, and concealment of the whereabouts of a child when Father allegedly went to the residence where Mother and the children were living, threatened Mother by knife while holding T.M.S., pushed K.M.S. to the ground, and fled with T.M.S. While Father was incarcerated, CYF learned that K.M.S. was not receiving necessary medical care. Father was released on bail with the condition that he was to have no contact with T.M.S. and K.M.S. Trial is still pending in Father's criminal matter. In May 2019, Father was charged with destruction of property for allegedly destroying a trailer he shared with Mother at the time. He was incarcerated from July 2019 to January 2020.

on April 7, 2021 and May 28, 2021. Mother participated via videoconference on April 7, 2021 but was not present for the hearing on May 28, 2021.[4] On August 12, 2021, the trial court entered decrees involuntarily terminating Mother's and Father's parental rights to A.M.S., K.M.S., and T.M.S. This timely appeal resulted.[5]

On appeal, Mother presents the following issues for our review:

1. Whether the [t]rial [c]ourt abused its discretion and/or erred as a matter of law by finding [CYF] established by clear and convincing evidence the grounds for termination of parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(5) and (a)(8)[?]

2. Whether the [t]rial [c]ourt abused its discretion and/or erred as a matter of law by holding that the developmental, physical, and emotional needs and welfare of the children as set forth in 23 Pa.C.S.A. § 2511(b) would be best served by terminating Mother's parental rights[?]

Mother's Brief at 3-4.

Regarding her first issue presented,[6] Mother claims the trial court abused its discretion or erred by involuntarily terminating her parental rights

---

[4] Counsel was present on behalf of Mother at the May 28, 2021 hearing. Counsel claimed that Mother was moving residences and requested a continuance which the trial court denied.

[5] On September 9, 2021, Mother filed a notice of appeal and statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2). On September 28, 2021, the trial court filed an opinion with this Court pursuant to Pa.R.A.P. 1925(a).

[6] Although Mother only sets forth two issues in her statement of questions presented section of her appellate brief, her first issue as presented above actually entails two argument sections of her brief. We address both argument sections together.

to the children pursuant to 23 Pa.C.S.A. §§ 2511(a)(5) and (a)(8). Mother's Brief at 16-17 and 21-36. In summary, Mother avers:

> Prior to CYF's filing [the t]ermination [p]etitions, Mother remedied the circumstances which led to the removal and placement of the [c]hildren and was fully compliant with [c]ourt-ordered services. Mother's regression after the filing of the [t]ermination [p]etitions cannot be considered. Specifically, prior to the filing of the [p]etitions, Mother ended an abusive relationship, complied with mental health services, established that substance abuse was not an issue, maintained stable housing and employment, and participated in caring for her children. It was only after CYF filed petitions seeking to terminate Mother's parental rights that she lost hope and regressed in her progress toward the court-ordered goals. Therefore, the [t]rial [c]ourt erred in terminating Mother's parental rights pursuant to [Sections] 2511(a)(5) and (a)(8).

*Id.* at 16-17. More specifically, citing 23 Pa.C.S.A. § 2511(b) and this Court's decision in *In re D.W.*, 856 A.2d 1231 (Pa. Super. 2004), Mother contends her "pre-petition conduct did not warrant termination of her parental rights, and her post-petition conduct should not be considered[.]" Mother's Brief at 25. Mother contends that "CYF had no intention to return the [c]hildren, even though she was compliant with all court[-]ordered directives, and even some requirements which were not court[-]ordered." *Id.* at 26. "Moreover, Mother [claims she] never earned a rating below 'moderate' as to compliance, although her progress diminished following the filing of the [t]ermination of [p]arental [r]ights [p]etitions in August 2020." *Id.* at 26-27.

We adhere to the following standards:

> In cases involving termination of parental rights: our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court

gave adequate consideration to the effect of such a decree on the welfare of the child.

Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. ... We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. We may uphold a termination decision if any proper basis exists for the result reached. If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result.

*In re Z.P.*, 994 A.2d 1108, 1115–1116 (Pa. Super. 2010) (internal citations, quotations, and original brackets omitted).

Here, the trial court involuntarily terminated Mother's parental rights on the following grounds:

**§ 2511. Grounds for involuntary termination**

(a) General Rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within

a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

* * *

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a).

This Court has stated:

Termination of parental rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child.

To terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8), the following factors must be demonstrated: (1) the child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child. Section 2511(a)(8) sets a 12–month time frame for a parent to remedy the conditions that led to the children's removal by the court. Once the 12–month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of the Agency supplied over a realistic time period. Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of Agency services.

The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state may properly be considered unfit and have his parental rights terminated.

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his ... ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.

Additionally,

> to be legally significant, the post-abandonment contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship and must also demonstrate a willingness and capacity to undertake the

parental role. The parent wishing to reestablish his parental responsibilities bears the burden of proof on this question.

There also is a recognized connection between Pennsylvania law on termination of parental rights and the Adoption and Safe Families Act ("ASFA"), the stated policy of which is:

To remove children from foster placement limbo where they know neither a committed parent nor can [they] look toward some semblance of a normal family life that is legally and emotionally equivalent to a natural family.... States such as Pennsylvania, which participate in the program, are required to return the child to its home following foster placement, but failing to accomplish this due to the failure of the parent to benefit by such reasonable efforts, to move toward termination of parental rights and placement of the child through adoption. Foster home drift, one of the major failures of the child welfare system, was addressed by the federal government by a commitment to permanency planning, and mandated by the law of Pennsylvania in its participation in the Adoption and Safe Families Act of 1997. Succinctly, this means that when a child is placed in foster care, after reasonable efforts have been made to reestablish the biological relationship, the needs and welfare of the child require CYS and foster care institutions to work toward termination of parental rights, placing the child with adoptive parents. It is contemplated this process realistically should be completed within 18 months.

*In re Z.P.*, 994 A.2d at 1118–1120 (internal citations, quotations, and original brackets omitted; emphasis added).

Here, in its opinion, the trial court specifically addressed Mother's mental health, housing, employment, medical care of the children, and maintaining contact with CYF in relation to Mother's court-ordered goals for reunification under Section 2511(a)(5). Trial Court Opinion, 9/28/2021, at 15-23. The trial court noted that although Mother completed a mental health evaluation, she was discharged from recommended outpatient therapy for lack of

attendance. *Id.* at 15. Moreover, the trial court determined that even though Mother passed four, individual narcotics tests over time, Mother never engaged in drug/alcohol treatment. *Id.* Regarding housing, the trial court recognized that Mother and Father resided together until September 2018, until the family was evicted. *Id.* at 16. Mother was homeless from September 2018 to December 2018. *Id.* In October 2019, Mother was living with a former boyfriend, as well as multiple other people, in the home of the boyfriend's grandmother. *Id.* Mother was involved with a housing assistance program, but she was ultimately discharged for noncompliance. *Id.* At the time of the termination hearings, Mother's residence was unknown. *Id.* Regarding employment, Mother worked at Turkey Hill from August 2019 to February 2020 and at Giant from April 2020 to November 2020. At the time of the second termination hearing, Mother's alleged employment at a construction company was not known or verified by CYF. *Id.* at 16-17. The trial court further determined that Mother was not consistently meeting the children's health care needs. *Id.* at 17. K.M.S. did not receive proper care regarding her chemotherapy treatments and faced the risk of infection, A.M.S. contracted hepatitis C and Mother did not inform CYF or seek medical attention, and Mother was resistant to seek diagnosed weight control for A.M.S. *Id.* Mother did not acknowledge her role or responsibility in failing to procure necessary medical care for the children. *Id.* at 18-19. The trial court cited testimony from Dr. Jonathon Gransee, a licensed psychologist who performed a parenting evaluation and bonding assessment with Mother and

the children on March 19, 2020. Dr. Gransee opined that Mother "suffers from PTSD, explosive anger, panic disorder, adult anxiety social behavior and unspecified personality disorder." *Id.* at 18. Dr. Gransee concluded that the parent's negative interactions with each other may affect the children and that the children may reach a point where they are more emotionally mature than Mother. *Id.* Dr. Gransee opined that Mother's slow progress with her mental health issues made it difficult to predict that she could remedy them regardless of the amount of time given. *Id.* at 20. Finally, the trial court opined:

> Mother made moderate progress until CYF filed the petition[s] to terminate her parental rights. Then her progress regressed. She does not communicate with [CYF]. Mother failed to take advantage of and utilize the services offered to her[.]
>
> * * *
>
> Here, Mother is not in a position today to safely take custody of the children. She has never had overnight visits with the children and her visits have always been supervised.
>
> While Mother has been generally consistent with her visits, she has never addressed the mental health issues which have stalled her progress towards unsupervised visits and overnights. Without that treatment, it is unlikely that Mother will have the emotional skills to identify and safeguard her children's medical and developmental needs.

*Id.* at 21. Accordingly, the trial court determined that all of the aforementioned conditions led to the removal and placement of the children, the children had been removed from the care of Mother for a period of at least six months, Mother cannot or will not remedy those conditions, and that

termination of Mother's rights would best serve the needs and welfare of the children pursuant to Section 2511(a)(5). *Id.* at 22.

Moreover, pursuant to Section 2511(a)(8), the trial court again relied upon Mother's lack of mental health treatment, lack of stable housing, and failure to obtain appropriate medical care for the children in concluding that involuntary termination of Mother's parental rights was appropriate. *Id.* at 22-23. The trial court found "most troubling" that Mother failed to appear for the May 28, 2021 hearing and, therefore, the trial court rendered its decision only upon the evidence presented by CYF. *Id.* at 23. The trial court further noted that since the filing of the termination petitions, "Mother seem[ed] to have given up and resigned herself to losing her parental rights." *Id.* The trial court deemed such actions "tragic… because there is no doubt that Mother loves her children." *Id.* Ultimately, the trial court determined that Mother's actions led to the removal and placement of the children, the children had been removed from the care of Mother for a period of at least 12 months, Mother cannot or will not remedy the conditions, and that termination of Mother's rights would best serve the needs and welfare of the children pursuant to Section 2511(a)(8). *Id.*

Upon review of the certified record, we agree with the trial court's assessments and discern no abuse of discretion or error of law in involuntarily terminating Mother's parental rights pursuant to either Sections 2511(a)(5) or 2511(a)(8). The children were removed from the home, in part, because between October 2017 and September 2018, "[t]here were 11 calls or

incidents identified by the Pennsylvania State Police of domestic violence" involving Mother and Father. N.T., 4/7/2021, at 128. Mother failed to secure proper chemotherapy care for K.M.S. and she risked infection. *Id.* at 129. Mother knew that A.M.S. had been diagnosed with hepatitis C in March 2017, but did not tell CYF or the foster parents. *Id.* at 135. CYF first learned that A.M.S. had contracted hepatitis C over two years later, in May 2019, and then sought immediate treatment. *Id.* at 135-136. Mother was discharged from a mental health program for lack of attendance, and she did not complete services. *Id.* at 144-147. Mother failed to provide CYF with any information about her current residence and had been discharged from a residential assistance program for non-compliance, despite monthly CYF requests for updates. *Id.* at 199.

A parent has the duty to exert herself, to take and maintain a place of importance in the children's lives. Mother did not avail herself of all the available resources to preserve the parental relationship and did not exercise reasonable firmness in resisting obstacles placed in the path of maintaining her relationship with the children. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the children with their physical and emotional needs. Mother has consistently failed to address her mental health needs, obtain suitable housing appropriate for her and the children, and/or timely address the children's medical needs. These conditions led to the removal of the children, continued to exist, and the children's lives cannot be

put on hold while Mother summons the ability to parent. Accordingly, we conclude that the trial court did not abuse its discretion or otherwise err in terminating Mother's rights under Section 2511(a) of the Adoption Act.

Furthermore, we reject Mother's suggestion that the trial court could not consider her deteriorating post-petition efforts.[7] Pursuant to Section 2511(b), "the court shall not consider any efforts by the parent **to remedy the conditions** described therein which are **first initiated subsequent to** the giving of notice of **the filing of the petition**." 23 Pa.C.S.A. § 2511(b) (emphasis added). This Court has stated that the plain language of this provision in Section 2511(b) also applies to Section 2511(a) analysis. *See In re D.W.*, 856 A.2d 1231, 1235 (Pa. Super. 2004) ("We are required to give effect to all provisions of the statute when possible." 1 Pa.C.S.A. § 1921(a). "Applying these principles, we find that the evidentiary restriction set forth in § 2511(b) applies to the entire termination analysis."). Although the statute clearly states that the trial court should not consider efforts to **remedy** described conditions, there is no provision prohibiting the trial court from considering a regression or recession in complying with court-ordered reunification goals after termination petitions have been filed. Mother has not cited any statutory or case law to support her assertion and our independent

---

[7] As set forth above, Mother concedes that her efforts towards reunification waned following the filing of the termination petitions. *See* Mother's Brief at 16-17 ("It was only after CYF filed petitions seeking to terminate Mother's parental rights that she lost hope and regressed in her progress toward the court-ordered goals.").

research has not revealed any. Moreover, "the judiciary may not carve out exceptions that were within the General Assembly's province to create." ***In re D.W.***, 856 A.2d at 1235. For all of the foregoing reasons, Mother's first issue lacks merit.

In her second issue presented, Mother argues the trial court abused its discretion or erred as a matter of law by involuntarily terminating her parental rights to the children pursuant to 23 Pa.C.S.A. § 2511(b). Mother's Brief at 37-45. Mother maintains that CYF "failed to present clear and convincing evidence the [c]hildren's emotional needs would be served by termination because the [c]hildren shared a strong, necessary, and healthy bond with Mother, and severing this bond could not be accomplished without irreparable harm to the [c]hildren." ***Id.*** at 39-40. Mother cites the trial court's belief that an abrupt severing of contact would not be beneficial to the children and its suggestion that a gradual reduction in visits was preferred. ***Id.*** at 40. Mother further points to a bonding assessment and CYF caseworker testimony acknowledging that Mother and the children are bonded. ***Id.*** at 40-42. Mother contends that K.M.S. and A.M.S. told their court-appointed guardian *ad litem* that they want to live with Mother. ***Id.*** at 41. Mother also argues that "concerns exist in regard[] to the foster/pre-adoptive parents" because CYF warned them not to utilize corporate punishment, to keep the children clothed unless they were changing or bathing, and avoid advising the children about court proceedings. ***Id.*** at 43.

Pursuant to 23 Pa.C.S.A. § 2511(b), the trial court

shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

Our Court has stated:

Once the statutory requirement for involuntary termination of parental rights has been established under subsection (a), the court must consider whether the child's needs and welfare will be met by termination pursuant to subsection (b).

When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

Above all else ... adequate consideration must be given to the needs and welfare of the child. A parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights.

Before granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the children's needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

*In re Z.P.*, 994 A.2d at 1121 (internal citations, quotations and brackets

omitted); *see also In re T.S.M.*, 71 A.3d 251, 269 (Pa. 2013) ("Obviously,

- 16 -

attention must be paid to the pain that inevitably results from breaking a child's bond to a biological parent, even if that bond is unhealthy, and we must weigh that injury against the damage that bond may cause if left intact.").

Moreover,

[i]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court [has] stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (internal citations, quotations, and original brackets omitted).

Regarding 23 Pa.C.S.A. § 2511(b), the trial court determined:

Dr. Gransee observed Mother with [the children] for 35-40 minutes. Mother took a walk with the children and Dr. Gransee reported that the children stayed close to Mother. Mother was obviously connected to her children, and she communicated well with the younger two, and adequately with A.M.S. The report states that Mother gave the children verbal instructions regarding safety next to the road, and A.M.S. seemed to have a bit of a defensive or oppositional attitude towards Mother.

Dr. Gransee testified that K.M.S. seemed to have an insecure bond with Mother. He stated that Mother was trying to set a limit with A.M.S. but without an empathic sense of how to interact. He stated that when there is a lack of empathy from the parent, the children will have a sense they are not being cared for or understood. This could weaken the bond due to frustration, anger and distrust of [the] parent. However, Dr. Gransee noted in his report that Mother has an established parent-child relationship with the children, and that they have a basic level of trust and attachment with her.

- 17 -

> [CYF caseworker, Charmaine] Vega testified that the children are happy and secure in the foster home. A.M.S. recognizes that her mother is not ready to assume parental responsibilities. A.M.S. has told the case workers that if her parents are unable to care for them, the children are happy with the foster parents. K.M.S. told the caseworker she misses her mom and dad. The children have been in foster care for two years. Ms. Vega testified that they have a positive, strong connection with the foster parents. She [did not] think there will be irreparable damage to severing the bond.
>
>          \*          \*          \*
>
> There is a bond between Mother and [the children]. They are in contact almost every day. However, the bond is unhealthy due to Mother's lack of insight into her mental health issues and her failure to do what is necessary to obtain unsupervised visits with the children and safe and suitable housing for the children.

Trial Court Opinion, 9/28/2021, at 23-25 (quotations, record citations, original brackets and superfluous capitalization omitted).

We discern no abuse of discretion or error of law in terminating Mother's parental rights under Section 2511(b). Initially, we note that Section 2511(b) does not require a formal bonding evaluation and the trial court was not required to rely upon expert testimony. Instead, the trial court was permitted to evaluate the testimony of the CYF caseworkers involved in this case in rendering its decision. One of the caseworkers testified that the children "always seem excited to see the foster parents" and that "the foster parents are very in tune with what these children need." *Id.* at 149-150. She opined that the children are bonded with their foster parents, permanent placement with, or adoption by, the foster parents was the best long-term option for the children, and that "the foster parents have done a wonderful job of ensuring

- 18 -

that these children's needs are met." **Id.** at 150-151. Accordingly, the certified record shows the trial court properly considered the children's safety as well as intangibles, such as the love, comfort, security, and stability the children have with the foster parents, examined the importance of the continuity of the relationships, and determined the unhealthy bond between Mother and the children could be severed without long-term, detrimental effects on them. The trial court gave adequate consideration to the needs and welfare of the children under Section 2511(b). Mother's own feelings cannot prevent termination of her parental rights. For all of the foregoing reasons, Mother is not entitled to relief on appeal.

Decrees affirmed.

Judge McCaffery joins.

Judge King did not participate in the consideration or decision of this case.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/24/2022